Filed 4/5/16  Jacob H. v. Superior Court CA2/1
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JACOB H., a Minor, | B266813 |
| Petitioner, | (Los Angeles County Super. Ct. Nos. TJ21169, TJ19922) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate.  Donna Q. Groman, Judge.  Order to show cause discharged and petition denied.

Samantha Buckingham, Patricia Soung, Center for Juvenile Law and Policy, for Petitioner.

No appearance for Respondent.

Jackie Lacey, District Attorney, Roberta Schwartz, Phyllis C. Asayama, and Matthew Brown, Deputy District Attorneys, for Real Party in Interest.

_____

Petitioner Jacob H. seeks review of the July 17, 2015 ruling of the juvenile court, declaring that he is competent to stand trial. Because the juvenile court's ruling was supported by substantial evidence, we discharge the order to show cause and deny the petition.

## BACKGROUND

Jacob H. is a dependent of the juvenile court under Welfare and Institutions Code[1] section 300, and in the present matter is the subject of three wardship petitions. The first petition was filed on August 27, 2014, pursuant to section 602, alleging one count of second degree robbery (Pen. Code, § 211), and one count of second degree commercial burglary (Pen. Code, § 459). The second petition was filed on February 11, 2015, alleging three counts of second degree robbery (Pen. Code, § 211), with allegations of gang and firearm enhancements (Pen. Code, §§ 186.22, subds. (b)(1)(C), 12022.53, subds. (b), (e)(1), 12022, subd. (a)(1)). While Jacob H. was detained at juvenile hall, a third petition was filed on July 8, 2015, alleging one count of arson of an inhabited structure (Pen. Code, § 451, subd. (b)), one count of threatening a public officer (Pen. Code, § 71), and one count of committing criminal threats (Pen. Code, § 422, subd. (a)).

Prior to the three petitions at issue, the juvenile court presided over two additional wardship petitions, which were filed on August 20, 2013 and September 16, 2013, pursuant to section 602. On May 7, 2014, the juvenile court deemed Jacob H. incompetent to stand trial on the two prior petitions, due to mental and developmental disabilities. The court also determined that it was not substantially probable that Jacob H. would attain competency in the foreseeable future, making findings based on four reports: A report by Dr. Stephanie Marcy based on evaluations conducted on November 27, 2013, December 11, 2013, and January 28, 2014, finding Jacob H. to have an IQ of 56 and diagnosing Jacob H. with mild mental retardation and post-traumatic stress disorder; a report by Dr. Lyn Laboriel based on an evaluation conducted on April 4,

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

2014, diagnosing Jacob H. with Fetal Alcohol Spectrum Disorder; a report by Dr. Catherine Scarf based on evaluations conducted on February 21, 2014 and March 17, 2014, diagnosing Jacob H. with intellectual disability and post-traumatic stress disorder, and concluding that he is incompetent but that he would be capable of attaining competency in a reasonable period of time; and a report by Dr. Armando De Armas based on an evaluation conducted on April 16, 2014, affirming the diagnosis of mild intellectual disability and post-traumatic stress disorder and concluding that Jacob H. is incompetent to stand trial based on developmental disability. Jacob H. was also assessed by Dr. Jennie Mathess in connection with his assessment for the South Central Los Angeles Regional Center, and in a report dated May 2, 2014, diagnosed Jacob H. with mild intellectual disability and post-traumatic stress disorder, along with unspecified disruptive, impulse control and conduct disorder.

Based on these reports, the juvenile court also set aside three prior petitions filed in 2008 and 2012, to which Jacob H. had pleaded guilty. The court concluded that Jacob H. was likely incompetent at the time of those petitions as well.

In May 2014, Jacob H. became a client of the South Central Los Angeles Regional Center and is eligible to receive lifetime support and services. As a result of this, Jacob H. was placed in a group home in June 2014. He later left the group home, without authorization, to live with his maternal great-grandmother.

Jacob H. first appeared in this case on September 4, 2014, and at the arraignment, defense counsel expressed a doubt about his competency, pursuant to section 709, based on the juvenile court's prior finding that Jacob H. was incompetent. The juvenile court appointed panel psychologist Nancy Kaser-Boyd to conduct a competency evaluation of Jacob H., and Dr. Kaser-Boyd tested Jacob H. in person and reviewed the four evaluations conducted from November 2013 to April 2014.

In an October 3, 2014 written report, Dr. Kaser-Boyd opined that Jacob H. has severe developmental disabilities, concluded that Jacob H.'s IQ is 56, and confirmed Dr. Laboriel's diagnosis of Fetal Alcohol Spectrum Disorder due to organic brain damage. She stated that Jacob H. suffers from depression and post-traumatic stress disorder. Dr.

3

Kaser-Boyd opined that Jacob H. was incompetent to stand trial. She also concluded: "Given Jacob's serious cognitive deficits, and so little apparently gained from multiple competency evaluations (where examiners also do some teaching of the concepts), I cannot say there is a substantial probability that Jacob will attain competency to stand trial in the foreseeable future." Based on this evaluation, on October 3, 2014, the juvenile court found Jacob H. incompetent to stand trial.

The juvenile court then held an "Incompetent to Stand Trial" (IST) Planning Hearing on October 17, 2014. At that hearing, although Dr. Kaser-Boyd testified that it was not substantially probable that Jacob H. could be restored to competency in the foreseeable future, the court concluded that Jacob H.'s restoration to competency was possible.

Jacob H. appeared before the juvenile court on February 11, 2015, in connection with the second of the three currently pending petitions. His counsel again declared a doubt as to his competency, pursuant to section 709. The court appointed panel psychologist Timothy Collister to conduct another competency evaluation of Jacob H. Dr. Collister's evaluation concluded, contrary to the six earlier evaluations, that Jacob H. was malingering and feigning intellectual deficits and that as a result, he could not overcome the presumption of competency. Based on his review of the prior testing, Dr. Collister found that certain of the prior test scores reflected anomalies, which was surprising and suggested that testing for malingering was appropriate. He administered a total of four tests, and as each one was presented the results suggested feigned efforts and suspect effort such that more testing was conducted. The first effort test administered was the 15-item Memory Test. The test includes presenting the individual with a sheet of paper to study for 10 seconds and memorize the information, which includes five groups of three bits of information. Each group of information contains a highly overlearned, automatic sequence such as A, B, C or 1, 2, 3. An individual recalling fewer than three complete sets, 9 data points, suggests feigned effort, and Jacob H. was only able to recall 8 of the 15 data points. Because Jacob H. scored below 9 on this test, a second test of effort, the Dot Counting Test, was administered. The results observed by Dr. Collister on

4

this test also suggested suspect effort. Next, Dr. Collister administered The B Test, which involves counting the number of times the letter B appears in an array. The results of this test also suggested suspect effort. Finally, Dr. Collister administered the Test of Memory Malingering (TOMM). The TOMM "provides a systematic method to assist clinicians in discriminating between bona fide memory impaired patients and malingerers." The test is also insensitive to neurological impairments. The results of the TOMM suggested that Jacob H. was feigning deficits, with scores well below those that would be obtained by chance. A score below 18 out of 50 is "unlikely to occur by chance," and Jacob H. scored 13 out of 50 on two administrations of the test. Any score lower than 45 on the second administration of the test, after which some learning is expected, indicates the possibility of malingering. "The responding on both trials was not even low, at the chance level, but below the chance level, showing intentionality to responding incorrectly." Dr. Collister concluded, "It is my opinion that Jacob H. is feigning deficits which are not true or actual. The results across four measures of effort consistently show he was responding in ways with suspect effort."

The juvenile court conducted hearings and took testimony over two days, including testimony from Dr. Marcy, Dr. Kaser-Boyd, and Dr. Collister. Dr. Collister testified as to the testing he performed on Jacob H., and also commented on the other expert reports. Dr. Collister testified about perceived errors in Dr. Marcy's reports, and stated that the error was compounded when her test results were relied upon by Dr. Laboriel, who is very well regarded and is "the expert here in Los Angeles about fetal alcohol syndrome." Dr. Collister concluded that because Dr. Laboriel relied so heavily on Dr. Marcy's report, the evaluators that followed Dr. Laboriel fell in line and none considered the possibility of malingering, stating, "No one else except Dr. Scarf did any effort tests. The effort test she did . . . is not about cognitive function. When I did that, I found various inconsistencies in the test results. I found the test of effort which have weight [*sic*] to show malingering suspect effort. So unfortunately I'm the only one here disagreeing with the other doctors, but I think there's reasons for that that are quite justified." Another factor influencing Dr. Collister's opinion was a report prepared by

Dr. Haig Kojian, after an evaluation that took place when Jacob H. was 11 years old.  Dr. Kojian's report did not suggest that Jacob H. was incompetent at that time.

The juvenile court accepted Dr. Collister's findings and concluded that Jacob H. did not satisfy his burden to demonstrate that he is incompetent.

This petition was filed on September 15, 2015, challenging that conclusion.  The petition seeks an order instructing the superior court to vacate its order finding Jacob H. competent and to instead issue an order declaring Jacob H. incompetent and dismissing the pending petitions against him.  We issued an order to show cause on December 4, 2015.  The People filed a return on January 7, 2016, and petitioner filed a traverse on March 7, 2016.

## DISCUSSION

A minor is presumed competent, and the party asserting the minor's incompetency bears the burden of proof.  (*In re R.V.* (2015) 61 Cal.4th 181, 193.)  The standard of review applicable to the juvenile court's conclusion that Jacob H. is competent to stand trial is a deferential "substantial evidence" test.  (*Id.* at p. 198.)  The "appellate court evaluating a claim of insufficient evidence supporting a determination of competency defers to the juvenile court and therefore views the record in the light most favorable to the juvenile court's determination."  (*Id.* at p. 200.)  The inquiry on appeal is "whether the weight and character of the evidence of incompetency was such that the juvenile court could not reasonably reject it."  (*Id.* at p. 201.)

"Even if the prosecution presents no evidence of competency, a juvenile court can properly determine that the minor is competent by reasonably rejecting the expert's opinion.  This court has long observed that '"[t]he chief value of an expert's testimony in this field, as in all other fields, rests upon the *material* from which his opinion is fashioned and the *reasoning* by which he progresses from his material to his conclusion."'"  (*R.V.*, *supra*, 61 Cal.4th at pp. 200-201.)

Section 709 provides, in relevant part:  "(c) If the minor is found to be incompetent by a preponderance of the evidence, all proceedings shall remain suspended for a period of time that is no longer than reasonably necessary to determine whether

6

there is a substantial probability that the minor will attain competency in the foreseeable future, or the court no longer retains jurisdiction. During this time, the court may make orders that it deems appropriate for services, subject to subdivision (h), that may assist the minor in attaining competency. Further, the court may rule on motions that do not require the participation of the minor in the preparation of the motions. These motions include, but are not limited to, the following: [¶] (1) Motions to dismiss."

Jacob H. argues that the juvenile court erred in adopting Dr. Collister's opinion and rejecting the six other experts who have evaluated Jacob H. between 2013 and 2015. Jacob H. argues that flaws in Dr. Collister's analysis support a determination that the juvenile court could not reasonably have rejected the evidence that Jacob H. is incompetent to stand trial. Jacob H. also contends that Dr. Collister's written report supports a finding of incompetency, because it states that in "similar situations with adults, a conservative analysis would be to find the person incompetent but then placed at a state hospital such as Patton. There, professionals who are skilled in understanding malingering and feigned deficits, would have the opportunity over a period of time to see behaviorally on a day-to-day basis discrepancies in what is now asserted about intellectual function and knowledge about the court proceedings vs. how they behave at other times when that is not an issue. In this situation, now that [Jacob H.] is a Regional Center consumer, it might be useful to have him placed at Porterville Developmental Center for a period of time. Competency training is provided there although it is more on the model of the adult criminal system but that can be tailored a bit to the juvenile system."

At a June 26, 2015 hearing, the juvenile court heard testimony from Dr. Marcy. Dr. Marcy testified that she does not administer testing for malingering, because she is not a board certified forensic psychologist. Dr. Collister explained at the hearing that although his report wound up disagreeing with each of the other evaluators, who found Jacob H. to be intellectually disabled, in his opinion there were "reasons for that that are quite justified," because the other evaluators did not conduct tests to determine malingering in connection with the evaluation of cognitive function.

7

Jacob H. argues that the evidence provided below was sufficient to demonstrate by a preponderance of the evidence that he is incompetent to stand trial, and that the juvenile court erred in rejecting the evidence provided in the six evaluations from Dr. Marcy, Dr. Laboriel, Dr. Scarf, Dr. De Armas, Dr. Mathess and Dr. Kaser-Boyd. Jacob H. argues that every evaluation, aside from the one by Dr. Collister, found him to be severely developmentally disabled and incompetent to stand trial. Jacob H. points to flaws in Dr. Collister's analysis at the competency hearing, including that Dr. Collister's criticism of Dr. Marcy's testing methodology as invalid was not accurate. Jacob H. asserts that the juvenile court committed error in permitting Dr. Collister's opinion to outweigh the opinions of the other professionals who evaluated Jacob H. Finally, he contends that a finding of malingering does not necessarily preclude a finding of incompetency.

Although all of the evaluators aside from Dr. Collister concluded that Jacob H. is developmentally disabled and incompetent to stand trial, the juvenile court was not required to accept the conclusions of the prior evaluators. Because Jacob H. has the burden of establishing that he is incompetent, even "if the prosecution presents no evidence of competency, a juvenile court can properly determine that the minor is competent by reasonably rejecting the expert's opinion." (*R.V.*, *supra*, 61 Cal.4th at p. 200.) Moreover, Dr. Collister performed tests that the other evaluators did not, specifically addressing malingering and effort, which resulted in test results that may explain the difference between Dr. Collister's testing and the testing from the other evaluators. As a result of that testing, Dr. Collister opined that Jacob H. did not overcome the presumption of competence. The juvenile court, having heard testimony from three of the evaluators, accepted Dr. Collister's findings and concluded that Jacob H. did not satisfy his burden, reading the portion of Dr. Collister's report stating that "there are discrepancies in the test results that are not credible. There is a strong cohesive fabric of responding in a non credible way, feigning deficits that are not true. It is my opinion that he has been in the legal system enough where he understands the benefit of being incompetent. As such the feigning of deficits appears to be for secondary gain and by definition malingering." While true that such a finding may not be inconsistent with a

8

finding of incompetency, the juvenile court's evaluation of the reports and live testimony resulted in a conclusion that Jacob H. did not satisfy his burden to demonstrate by a preponderance of the evidence that he is incompetent.

We view this evidence in the light most favorable to the juvenile court's determination that Jacob H. did not satisfy his burden. Dr. Collister provided detailed testing results and testimony suggesting that Jacob H. was malingering, and calling into question prior testing results that were not accompanied by similar tests of effort. As such, the juvenile court was not unreasonable in placing more weight on Dr. Collister's testimony than the testimony and evaluations of the other evaulators. The weight and character of evidence of incompetency was not such that the juvenile court could not reasonably reject it. (*R.V.*, *supra*, 61 Cal.4th at p. 201.) Accordingly, we discharge the order to show cause and deny the petition.

## DISPOSITION

The order to show cause is discharged and the petition is denied.

NOT TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

JOHNSON, J.

LUI, J.

9